IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

TONYA LYNN FERRELL )
)
v. ) No. 2:12-0094
)
CAROLYN W. COLVIN, )
    Acting Commissioner of )
    Social Security )

### MEMORANDUM

This case is before the undersigned for all further proceedings, pursuant to the consent of the parties and the order of the District Judge (Docket Entry No. 24). Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 15), to which Defendant has filed a response (Docket Entry No. 17).

For the reasons stated herein, the Court REVERSES the decision of the Commissioner and REMANDS this case for further administrative proceedings.

### I. INTRODUCTION

Plaintiff protectively filed for a period of disability, DIB, and SSI in July of 2008. *See* Transcript of the Administrative Record (Docket Entry No. 11),[1] at 39, 51, 53.[2] She alleged a

---

[1] The transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s). All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s),

disability onset date of April 2, 2007. *Id.* She asserted that she was unable to work because of fibromyalgia, hypothyroidism, depression, anxiety, and mental disorder. *Id.* at 54.

Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 39, 47, 49, 51, 53, 83. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ K. Dickson Grissom on December 2, 2010. *Id.* at 555. On January 13, 2011, the ALJ issued a decision unfavorable to Plaintiff. *Id.* at 36-38. On August 23, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 29-31, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c).

## II. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on January 13, 2011. *Id.* at 36-38. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since April 2, 2007, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

\*\*\*

---

where appropriate.

² The Court notes some confusion as to the numbering used by the administrative law judge and the parties to reference the administrative record. As such, for purposes of clarity, the Court will refer to the docket entry numbers and the corresponding page ID numbers located at the bottom of each page in the electronic case record, which are preceded in the electronic footer by "Page ID #."

3. The claimant has the following severe impairments: fibromyalgia syndrome; posttraumatic stress disorder; anxiety disorder; obesity; and hypothyroidism (20 CFR 404.1520(c) and 416.920(c)).

***

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she would be limited in the ability to climb, stoop, bend, crouch, or crawl; she would be able to stand or walk at least 2 hours of an 8 hour work day, with a sit/stand option to change positions every 30 minutes. Due to psychological and emotional conditions, she would be further limited to simple repetitive and some low level detailed tasks; co-worker and public contact should be no more than causal [sic], infrequent, and ideally minimal; supervision should be direct and non-confrontational; and changes in the work place be infrequent and gradually introduced.

***

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

***

7. The claimant was born on March 17, 1966 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

>    national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> ***
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 40-46.

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the Administrative Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

#### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process, *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991), and a reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory

diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs*, *supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate

circumstances). Even if the claimant's impairment(s) prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Inquiry for Plaintiff

The ALJ found that Plaintiff met the first two steps, DE 11 at 40-41, but was not presumptively disabled because she did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id*. at 41-42. However, the ALJ found that Plaintiff's impairments rendered her unable to perform her past relevant work, *id*. at 45, thus triggering the fifth step of the inquiry. At the fifth step, the ALJ found that Plaintiff's RFC allowed her to perform a limited range of sedentary work with certain limitations as set out in his findings, *id*. at 42-44, and that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 45-46.

## D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: 1) failing to provide good reasons for rejecting the opinion of the treating physician; 2) failing to properly evaluate the psychological evidence in the record; and 3) failing to properly evaluate Plaintiff's pain. DE 16 at 610-14. Plaintiff therefore maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed.[3]

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertions of error are addressed as follows:

### 1. Whether the ALJ provided good reasons for rejecting the treating physician's opinion.

Plaintiff argues that the ALJ failed to provide good reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Michael Cox, and that the ALJ erred by not giving Dr. Cox's

---

[3] Plaintiff fails to request any specific relief, but instead states simply that she is entitled to judgment as a matter of law. DE 15 at 587. The Court will therefore treat Plaintiff's motion and accompanying brief as a request for remand for further consideration.

9

opinion controlling weight. DE 16 at 611-12. Plaintiff asserts that all of the medical evidence in the record is consistent with Dr. Cox's opinion. *Id.* at 612. Therefore, because Dr. Cox's opinion is "based on objective evidence and is consistent with the other evidence of record," *id.*, Plaintiff argues that it is entitled to controlling weight.

If the opinion of a treating physician regarding the nature and severity of a claimant's condition is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then such opinion will be accorded controlling weight. *Rogers*, 486 F.3d at 242 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)). In many cases, even if the treating physician's opinion is not entitled to controlling status, the opinion is still entitled to "great deference." *Id.* (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4). Regardless, the ALJ's opinion "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Notwithstanding this requirement, the Sixth Circuit has held that an ALJ's failure to explicitly indicate the weight given to a physician's opinion is harmless error as long as the goal of providing good reasons, as required by 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), was met. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006). It is undisputed that the ALJ in this case failed to specify the amount of weight he assigned to the opinion of Dr. Cox. However, Defendant essentially argues that the goal of providing good reasons was met because the ALJ

"implicitly rejected Dr. Cox's opinion," which was "far more limiting" than the opinion provided by Dr. Keown. DE 17 at 625.

Despite Defendant's argument, the Court finds that the ALJ failed to comply with the requirement of 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2) to sufficiently explain the weight given to Dr. Cox's opinion. Defendant devotes a significant portion of its argument to a discussion of the findings of both Dr. Cox and Dr. Donita Keown, who examined Plaintiff on January 15, 2010. DE 17 at 624-25; DE 11 at 288-90. Defendant claims that "[s]ubstantial evidence of record supports the ALJ's RFC finding, his acceptance of Dr. Keown's opinion, and his rejection of Dr. Cox's opinion that Plaintiff had additional limitations which precluded the ability to work." DE 17 at 625. This is not, however, an accurate representation of the ALJ's findings. For one, the ALJ did not accept all of the functional limitations recommended by Dr. Keown. The RFC states vaguely that Plaintiff "would be limited in the ability to climb, stoop, bend, crouch, or crawl." DE 11 at 42. This appears to be based on Dr. Keown's finding that Plaintiff would be able to "continuously" climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. *Id*. at 293. However, Dr. Keown also opined that Plaintiff would be able to sit, stand, and walk for eight hours total during a work day. DE 11 at 292. In contrast, the RFC includes a limitation that Plaintiff "would be able to stand or walk at least 2 hours of an 8 hour work day, with a sit/stand option to change positions every 30 minutes." *Id*. at 42. This two-hour limitation and the sit/stand option appear in the medical source statement provided by Dr. Cox. *Id*. at 213-14. The ALJ therefore incorporated part of Dr. Cox's opinion, which conflicted with Dr. Keown's opinion, into the ascribed RFC.

Moreover, although he recites the findings listed in Dr. Cox's medical source statement, the ALJ provides little discussion of Dr. Cox's treatment of Plaintiff in the opinion. The ALJ claims that the records documenting her treatment with Dr. Cox were only "for routine maintenance of her medication refills," *id*. at 43, yet Plaintiff voiced specific complaints during several of her visits with Dr. Cox, including depression, pain in the left foot, and broad pain throughout her body. *Id*. at 218, 220, 231, 242. Additionally, the ALJ claims that an office note from August 23, 2010 indicated that Plaintiff "appeared in no acute distress," *id*. at 43, apparently in support of his rejection of Dr. Cox's opinion. However, on October 11, 2010, less than two months later, Plaintiff reported that she "hurt[] all over." *Id*. at 218. Dr. Cox also indicated during this subsequent visit that Plaintiff had "Multiple Tender Points over entire upper back and shoulders." *Id*. at 220. This type of selective emphasis on treatment records by an ALJ is not permitted in assessing a claimant's condition. *See Davis v. Colvin*, No. 2:10-CV-00088, 2015 WL 3504984, at *6 (M.D. Tenn. May 28, 2015) ("[N]either the ALJ nor this Court may cherry-pick the record to support its conclusions, but both must 'consider the evidence taken as a whole.'") (quoting *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984)).

This selective emphasis is compounded by the ALJ's failure to identify the weight he accorded Dr. Cox's opinion. Similar to his discussion of Dr. Cox's opinion, the ALJ states that he considered the mental functional capacity assessment of consultative examiner Jeffrey Herman, M.A., DE 11 at 44, yet it is unclear how much weight was given to this opinion. The ALJ provides the following limitations in the RFC with respect to mental impairments:

> Due to psychological and emotional conditions, [Plaintiff] would be further limited to simple repetitive and some low level detailed tasks; co-worker and public contact should be no more than casual [sic], infrequent, and ideally minimal; supervision

12

> should be direct and non-confrontational; and changes in the work place [should] be infrequent and gradually introduced.

*Id*. at 42. Mr. Herman noted in his report that Plaintiff was capable of understanding and remembering both simple or detailed instructions, *id*. at 419, which may have formed the basis of the "simple repetitive and some low level detailed tasks" limitation in the RFC. However, Mr. Herman also found that "[s]ocial functioning is the [Plaintiff's] area of greatest limitation," and further stated that "[t]his is likely to limit her ability to hold gainful employment." *Id*. He then opined that Plaintiff's "personality disorder will make it hard for her to hold competitive employment." *Id*. at 420. This is not mentioned anywhere in the ALJ's opinion, and the ALJ appears to reject this opinion outright by stating the following immediately after discussing Mr. Herman's findings: "However, there are no medical records to indicate the claimant ever sought or received any professionally [sic] mental health treatment or counseling." *Id*. at 44. This statement suggests that Mr. Herman's opinion was at least discounted, although the ALJ does not state specifically the amount of weight, if any, was given to this opinion. Nevertheless, the ALJ confusingly states later in his opinion that he "has accorded great weight to the opinions of the State agency medical *and psychological* consultants insofar as they are clearly supported by the record as a whole." *Id*. (emphasis added). This suggests that the ALJ gave "great" weight to Mr. Herman's report despite rejecting almost all of the opinions contained therein, including the opinion that Plaintiff's social functioning and personality disorder will "make it hard" for her to have gainful employment. As discussed in detail below, however, the ALJ actually accorded great weight to the opinions of Dr. Aileen McAlister, another State consulting examiner who provided a psychiatric assessment of Plaintiff, *id*. at 398, and Dr. Edward Sachs, a State consulting psychologist who

13

provided a mental residual functional capacity assessment, *id*. at 309, even though these assessments were not discussed in the ALJ's opinion.

The Court highlights this confusion to demonstrate the importance of providing good reasons for the weight given to the treating physician's opinion. The ALJ's lack of specificity in this regard "gives rise to a level of confusion that is avoidable when 20 C.F.R. § 404.1527[c] and SSR 96-2p are properly applied." *Peacock v. Astrue*, No. 2:05-0076, 2009 WL 3615011, at *15 (M.D. Tenn. Nov. 2, 2009). The Sixth Circuit has stated the following with respect to this rule:

> [W]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.

*Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009) (internal citations omitted). *See also Reagan v. Colvin*, 47 F. Supp. 3d 648, 661 (E.D. Tenn. 2014) ("The [Sixth Circuit] has reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling.") (citing *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011)).

The requirement to provide good reasons "exists so plaintiffs are able to understand how their case was decided and to ensure the ALJ applied the treating physician rule." *Peacock*, 2009 WL 3615011, at *15 (citing *Wilson*, 378 F.3d at 544-45). In this case, the ALJ did not provide good reasons for rejecting Dr. Cox's opinion, nor did he specify the amount of weight given to his opinion. Accordingly, the Court finds that this matter should be remanded for further consideration of Plaintiff's claim.

**2. Whether the ALJ properly evaluated psychological evidence.**

Plaintiff next contends that the ALJ "did not give proper reason for rejecting the psychological evidence of record." DE 16 at 612. Plaintiff then proceeds to recite the findings of Mr. Herman before claiming that the ALJ "totally failed in his characterization of this report." *Id*. at 612-13. Plaintiff essentially argues that the ALJ failed to adopt Mr. Herman's report in its entirety.

The ALJ noted in the opinion that Plaintiff had never received any formal mental health treatment or therapy from a specialist. *Id*. at 43-44. He also discussed that Plaintiff's anxiety had improved with medication. *Id*. at 43. Notably, Plaintiff has not submitted any evidence regarding a mental impairment from a mental health professional. Counsel for Plaintiff admitted during the hearing before the ALJ that Plaintiff did not see anyone regularly for mental health treatment, nor did she provide any type of mental health evaluation to the ALJ. DE 11 at 575-76. Significantly, despite being referred to a mental health specialist by Dr. Clough, *id*. at 519, Plaintiff failed to undergo any mental health treatment from the referred therapist. Plaintiff disputes this, claiming that an "outpatient psychosocial assessment was completed at Personal Growth and Learning Center in 2008 after referral from Dr. Clough."[4] DE 16 at 613. Plaintiff is correct that this initial assessment occurred on July 23, 2008. DE 11 at 209, 519-24. However, there is no evidence that Plaintiff attended any sessions with the therapist following this initial evaluation. When questioned regarding this lack of treatment during her hearing, Plaintiff stated the following:

> [I] talked to a man that one day which – which upset me because I have a hard time being around a man unless it's someone I've known. And, but, I talked to him for

---

[4] Of note, Dr. Clough believed that Plaintiff suffered from obsessive compulsive disorder ("OCD"). DE 11 at 519.

15

several hours and my mother went with me and I was upset when I left, blacked out in the parking lot. But I tried to go back several times and I would get all the way down there and then they would tell me that he wouldn't be in or they would have to reschedule my visits. And, at the time, I didn't have the gas money to go 40 miles, and, from where I live. So, I had to stop going.

*Id*. at 566-67. While the Court is sympathetic to financial constraints, Plaintiff's failure to attend any mental health treatment sessions leaves her without any evidence of a mental impairment from a mental health specialist.[5] There is also no evidence in the record of any attempts by Plaintiff to reschedule appointments with Personal Growth and Learning Center. As such, Plaintiff relies exclusively on the assessment of Mr. Herman, the state agency consultative examiner.

Mr. Herman listed Plaintiff's primary diagnosis as avoidant personality disorder. *Id*. at 419. He also noted that social functioning was Plaintiff's "area of greatest limitation," and opined that "[t]his is likely to limit her ability to hold gainful employment." *Id*. Mr. Herman further stated that Plaintiff's personality disorder "will make it hard for her to hold competitive employment," and advised that Plaintiff "might be a good candidate for some kind of jobs-skill training program or supported employment program." *Id*. at 420.

During the hearing, the ALJ presented a hypothetical to the vocational expert that included the following nonexertional limitations:

> no more than simple and repetitive and somewhat low level detail[ed] tasks . . . coworker and public contact . . . to be avoided . . . casually and would be infrequent and ideally it should be minimal. Supervision should be direct and non-

---

[5] The Court also notes that, despite Plaintiff's claims regarding the financial hardship of driving to therapy appointments in nearby Cookeville, Plaintiff was driving to and from Livingston, Tennessee from her home in Allons, Tennessee five times per week to attend classes at Tennessee Technology Center in 2008. DE 11 at 415-16. This took place around the same time that she received her initial evaluation from Personal Growth and Learning Center. *Id*. at 209, 519-24.

confrontational and changes in the workplace should be infrequent and gradually introduced.[6]

*Id*. at 578. Plaintiff claims that this hypothetical "mischaracterized" the opinion of Mr. Herman. DE 16 at 613. However, the apparent basis for the ALJ's hypothetical regarding nonexertional limitations is the functional capacity assessment performed by Dr. Aileen McAlister, a psychiatrist who opined that Plaintiff was capable of "understanding, remembering, and concentrating to carry out simple and low level detailed tasks," DE 11 at 396, and the functional capacity assessment performed by Dr. Edward Sachs, who stated that Plaintiff "can adapt to gradual or infrequent changes." *Id*. at 311. Dr. McAlister also found that Plaintiff was capable of "interacting with coworkers, supervisors, and general public with some difficulty. Change in the work place should be introduced slowly." *Id*. at 396. These are very similar to the restrictions posed by the ALJ in his hypothetical, suggesting that he found the limitations recommended by Dr. McAlister and Dr. Sachs to be credible. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 ("In fashioning the hypothetical question to be posed to the vocational expert, the ALJ is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal quotations omitted). These restrictions also mirror those included in the RFC with respect to Plaintiff's nonexertional limitations. *Id*. at 42. As such, the ALJ gave significant weight to the opinions of Dr. McAlister and Dr. Sachs, and appears to have rejected the opinion of Mr. Herman. This is supported by the ALJ's discussion of Mr. Herman's opinion, in which he concluded that despite Mr. Herman's findings,

---

[6] There are multiple gaps in the transcription of the ALJ's hypothetical, which were filled in with handwritten notes. DE 11 at 578. This was apparently caused by issues with the ALJ's microphone and the court reporter's inability to hear the ALJ during parts of the hearing.

"there are no medical records to indicate the claimant ever sought or received any professionally [sic] mental health treatment or counseling." *Id*. at 44.

Based on the foregoing, the Court accepts that the ALJ likely evaluated all of the psychological evidence in the record, and did not mischaracterize the opinion of Mr. Herman. Nevertheless, the ALJ failed to discuss the opinions of Dr. McAlister and Dr. Sachs anywhere in his opinion, despite relying heavily on their respective functional capacity assessments in both his hypothetical posed to the vocational expert and the ascribed RFC. This is not inconsequential, as Plaintiff was unable to discern the basis for the questions posed to the vocational expert and the ultimate restrictions contained in the RFC. She instead argued that the ALJ had "mischaracterized" the opinion of Mr. Herman, DE 16 at 613, which is not unreasonable in light of the ALJ's failure to discuss any other opinion with respect to Plaintiff's alleged mental impairment.

It is true that there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Adams v. Comm'r of Soc. Sec.*, No. 4:13-CV-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)). Furthermore, the ALJ is not required to discuss every piece of evidence contained in the record for his decision to stand. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004). However, when the ALJ fails to discuss relevant evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (6th Cir. 1988) (internal citation omitted). In light of the ALJ's failure to specify the weight afforded to the treating physician, as discussed *supra*, and the ALJ's failure to even identify Dr. McAlister or Dr. Sachs in his opinion despite incorporating their findings into the RFC, the Court finds that this matter should be remanded for further consideration.

**3. Whether the ALJ failed to properly evaluate Plaintiff's complaints of pain.**

Plaintiff finally argues that the ALJ "erred in his evaluation of [Plaintiff's] pain." DE 16 at 613. Plaintiff fails to reference any evidence in the record, or even cite the ALJ's opinion in this section of her brief. She instead quotes the American College of Rheumatology's definition of fibromyalgia before stating that Dr. J. Thomas John "has confirmed [Plaintiff's fibromyalgia diagnosis] and [Plaintiff's] treating physicians have all noted the restrictions she has from it." *Id*. at 613-14. Although not stated explicitly, Plaintiff appears to argue that the ALJ improperly discounted her credibility.

The Court finds that this lackluster argument is without merit. For one, Plaintiff simply argues that she suffers from fibromyalgia, and that fibromyalgia is a medically determinable impairment. *Id*. However, neither of these issues is in dispute. In fact, the ALJ determined that Plaintiff's fibromyalgia represented a severe impairment. DE 11 at 40. The issue is instead the extent to which this impairment affects Plaintiff's functional capacity.

The ALJ discussed numerous examples of evidence suggesting that Plaintiff's statements regarding the extent of her symptoms were not credible. For example, despite claiming that her disabling condition began in 2007, Plaintiff completed a program in medical administration in 2009. *Id*. at 43. This included driving to Livingston, Tennessee for class five days per week, and attending class for six hours per day. *Id*. The ALJ discussed the lack of objective findings to support Plaintiff's complaints of pain, including MRI and x-ray findings, as well as the inconsistency of Plaintiff's complaints. *Id*. Furthermore, medical records suggest that Plaintiff's fibromyalgia symptoms were controlled with medication in the months leading up to her hearing. *Id*. at 218, 231, 235, 239.

Plaintiff does not address any of these findings in her argument. In fact, Plaintiff does not even discuss her own alleged symptoms, but instead lists the symptoms that are usually associated with fibromyalgia. DE 16 at 613-14. This does nothing to refute the ALJ's credibility determination. The ALJ's findings regarding a claimant's credibility are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Accordingly, the Court finds that the ALJ's credibility was properly explained and supported by substantial evidence in the record. *See Rogers*, 486 F.3d at 248. Nevertheless, the Court finds that this case should be remanded based on the above discussion with respect to Plaintiff's other assertions of error.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 15) is GRANTED. The Court hereby REVERSES the decision of the Commissioner and REMANDS this case for further proceedings consistent with this ruling.

An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge